UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  CASE NO.: 8:15-CR-284-T-26MAP

ROBINSON PEREZ-MONTES
_____/

**SENTENCING MEMORANDUM**

**FACTUAL AND PROCEDURAL HISTORY**

The Defendant has received a copy of his Pre-Sentence Investigation Report ("PSIR") prior to sentencing. It was reviewed with counsel with the assistance of a federally certified Spanish interpreter. Although the Defendant does not have an objection to the facts outlined in the PSIR in paragraphs 1-10, a more detailed recitation of facts is as follows, to-wit:

1. On July 29, 2015, the Defendant was charged by Indictment with the crimes of conspiracy to possess with the intent to distribute five (5) kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States[1] (Count One) **and/or** possession with the intent to distribute five (5) kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States (Count Two).

---

[1] The government filed a motion for a preliminary determination of jurisdiction under the Maritime Drug Law Enforcement Act and the Court granted the government's motion for a preliminary determination of jurisdiction on October 1, 2015.

2. The Defendant chose to be tried by jury and a trial commenced on March 28, 2016, and terminated with the rendering of guilty verdict as to Count One and **NOT GUILTY** as to Count Two on April 1, 2016.

3. During the course of the trial, the following evidence against the Defendant was presented to the jury, to-wit:

   a. The Defendant was a passenger or crewman onboard a twenty-five (25) foot fishing vessel known as the DILAN.

   b. There were two (2) other co-defendants (LUCIO MOLINA MARROQUIN and JAVIER NOYOLA-RUIZ) present onboard the DILAN.

   c. On July 18, 2015, the DILAN was intercepted by Coast Guard personnel approximately 200 nautical miles from the closest point of land. Gov't trial exhibit 38I.

   d. The Coast Guard had also intercepted a self-propelled semi-submersible (SPSS) vessel ("GERONIMO") loaded with five (5) to seven (7) tons of cocaine and occupied by four (4) Colombian crewmen approximately twelve (12) nautical miles away.

   e. The SPSS was occupied by four (4) Colombian nationals: **ROBERT VALENCIA, CESAR VALENCIA, JOSE RAMOS,** and **JOHN PINEDA.**

f.  Witnesses testified that the DILAN was headed in the direction of the SPSS.

g.  The DILAN was observed on three (3) separate occasions by military aircraft and eventually changed course and headed away from the SPSS.

h.  Witnesses from the helicopter from the USS STRATTON testified that they attempted to have the DILAN stop by several methods and eventually fired warning shots at the DILAN.

i.  The DILAN did stop in the water and was eventually boarded by Coast Guard personnel and the Defendant was found to be onboard.

j.  No drugs were ever seen by aircraft or found onboard the DILAN.

k.  The Defendant was **NOT** identified as the captain or master of the DILAN.

l.  There was fishing equipment aboard the DILAN; however, the witnesses opined that the equipment was not suitable for a legitimate fishing voyage[2].

m.  The witnesses admitted that the equipment aboard the DILAN was not up to American standards; however, the equipment could be used to catch fish.

---

[2] Witnesses claimed that no ice, bait, fish, knives or other significant fishing equipment was found aboard the DILAN when boarded.

n.  The DILAN was not observed violating any American or international laws; however, the DILAN was assumed to have been connected to the SPSS by Coast Guard personnel.

o.  None of the crewmen on the SPSS knew anyone onboard the DILAN and no incriminating statements by any crewman onboard the DILAN were made to the Coast Guard.

p.  The Defendant made no statements to anyone during the boarding[3] or at any time thereafter nor did the Defendant commit any act consistent with being involved in a criminal conspiracy[4].

q.  Although two (2) Colombian crewmen testified at trial, none of them attributed any statements to this Defendant.

r.  The Defendant was merely present aboard the DILAN and was not observed to be violating any laws.

---

[3] USCG Officer COLLINS, who served as a translator during the boarding, claimed that all three (3) defendants were speaking at the same time during the boarding questioning and gave "vague" answers about the purpose of the voyage of the DILAN; however, she could not attribute any specific statements to Mr. PEREZ-MONTES. See attached trial transcript excerpts which consist of excerpts from direct examination (March 29, 2016, transcript pp. 216-222) and cross-examination (March 29, 2016, transcript pp. 240-242).

[4] The government contended that an individual on the DILAN tossed a cell phone into the water after being spotted by government aircraft. There was a suggestion that the individual was Mr. PEREZ-MONTES; however, there was no proof as to what was done with the phone or who was called.

**CURRENT GUIDELINE CALCULATIONS**

The Pre-Sentence Investigation Report (PSIR) has been reviewed and the Defendant would object to the failure to include a downward adjustment for his role in the offense in **paragraph 18**. (See below). The current guideline calculation is based upon a **total offense level of 38 and a criminal history category of I,** the guideline imprisonment range is **235 to 293 months**. No motion for a downward departure of his recommended sentence based upon substantial assistance has been filed by the government at this time nor is one expected[5].

**PERSONAL HISTORY**

**ROBINSON PEREZ MONTES** was born on July 24, 1976, in Chapas, Mexico. He is the only child born to the marriage of ADOLFO PEREZ JIMENEZ and SARA MONTES MATIAS (who died of cancer approximately five years ago). ADOLFO PEREZ JIMENEZ is 64 years old and currently resides in Mexico and cleans houses for a living. The defendant was raised by his maternal grandparents in Mexico because of his parents' divorce when he was three (3) months old. Once he began living with his grandparents, he did not have any contact with his father and saw his mother approximately once per year. The

---

[5] After conviction, but prior to sentencing, the undersigned did discuss the safety-valve provision contained in 5C1.2 of the U.S.S.G. which gave the Defendant an opportunity to obtain a downward adjustment of two (2) levels; however, a proffer was never scheduled because the government would not accept the Defendant's version of facts as truthful and litigating the matter before the Court may have resulted in an upward adjustment for obstruction of justice if the Court found that the Defendant was not truthful.

defendant experienced a "normal" upbringing with his grandparents and had no
problems within the family home and that his grandparents treated him well. The family was poor but they provided him with the basic necessities. The defendant is presently single but he shared a common-law relationship with NEIVA SAVALETA for eight (8) years. Their relationship ended approximately two (2) years ago but they had two (2) children together: ALONDRA JUQUILA SAVALETA, age 5; and ROBINSON NAZARIO SAVALETA, age 4, and one (1) child from NEIVA's previous relationship, MARIA FERNANDA SAVALETA, age 8. The defendant resided alone in a one bedroom, one bathroom, apartment apartment in Oaxaca, Mexico, at the time of his arrest. The Defendant's employment history solely consisted of being a fisherman in Mexico and he earned an estimated $79 to $211 USD per month from this job.

## **FINANCIAL CONDITION**

The defendant completed sixth grade in Mexico and can read and write in Spanish. The defendant is a lifelong fisherman. The defendant has court-appointed counsel and is in custody facing a significant term of imprisonment and has no income and no assets.

## **ROLE IN THE OFFENSE**

The Defendant would object to the failure to include a downward adjustment for his role in the offense in **paragraph 18**. In this case, the Court must determine the Defendant's role in this offense. The evidence received at trial showed the Defendant was

6

a passenger aboard the DILAN and no drugs were recovered on board. According to Colombian witnesses, the crew from the SPSS was to be transported to shore while other boats loaded the drugs on the high seas. At best, the Defendant was to be aboard while the Colombian crew boarded the DILAN and would be taken to shore. Incriminating statements were attributed to the other Mexican defendants; however, no such evidence against Mr. PEREZ-MONTES exists. As such, the Defendant's role is less than the other participants in this conspiracy (and even on board the DILAN itself) and requests **a four (4) level downward adjustment**.

The sentence imposed for a particular offense is based upon the applicable sentencing offense levels set forth in Chapter Two (Offense Conduct) of the Sentencing Guidelines. A sentence adjustment for "the role the defendant played in committing the offense" (either mitigating or aggravating) may also be available. U.S.S.G. Ch. 3, Pt. B, intro. comment. Specifically, a defendant may receive a two to four level reduction in his base offense level where his role in the offense can be described as minimal, minor, or somewhere in between. See U.S.S.G. § 3B1.2. Minimal participants may receive a four-level reduction, minor participants may receive a two-level reduction, and those whose participation falls in between may receive a three-level reduction. See U.S.S.G. § 3B1.2(a), (b).

The commentary to the Guidelines instructs that a four-level reduction "is intended to cover defendants who are plainly among

7

the least culpable of those involved in the conduct of a group ....
[and their] lack of knowledge or understanding of the scope and
structure of the enterprise and of the activities of others is
indicative of a role as minimal participant." U.S.S.G. § 3B1.1,
comment. (n.1). The application note provides, for example, that
a four-level reduction would be appropriate "for someone who played
no other role in a very large drug smuggling operation than to
offload part of a single marihuana shipment, or in a case where an
individual was recruited as a courier for a single smuggling
transaction involving a small amount of drugs." U.S.S.G. § 3B1.2,
comment. (n.2). In contrast, a minor role in the offense "means
any participant who is less culpable than most other participants,
but whose role could not be described as minimal." U.S.S.G. §
3B1.2, comment. (n.3).

The District Court must measure the defendant's role against
the relevant conduct for which he has been held accountable. This
measurement is compelled by both the Guidelines and case precedent.
The Guidelines provide that the district court should evaluate the
defendant's role in the offense "on the basis of all conduct within
the scope of § 1B1.3 (Relevant Conduct), i.e., all conduct included
under § 1B1.3(a)(1)- (4), and not solely on the basis of elements
and acts cited in the count of conviction." United States v.
Rodriquez DeVaron, 175 F.3d 930 (11th Cir. 1999).

The Defendant bears the burden of proving his minor role by a
preponderance of the evidence. United States v. Rodriquez De Varon,
175 F.3d 930, 939 (11th Cir. 1999) (en banc). The Defendant

sustains that burden if he persuades the trier of fact that "the existence of a fact is more probable than its nonexistence..." Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622, 113 S. Ct. 2264, 2279 (1993); In re Winship, 397 U.S. 358, 371-372, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)(Harlan, J., concurring)).

The case of United States v. Rodriguez De Varon, 175 F. 3d 930 (11th Cir. 1999), deals with the determination of mitigating role reductions. The Rodriguez De Varon Court opined that §3B1.2 does not automatically preclude a defendant from consideration for a mitigating role reduction when a defendant is held accountable for a particular quantity of drugs that he or she handled pursuant to USSG §1B1.3. The Rodriguez De Varon court established a two part test in order to determine whether a defendant qualifies for a role reduction in drug cases. Id. 934. Although this case involves the transportation of the Colombian crew and not drug distribution, the factors for considering a role reduction are the same.

Initially, the court opined that the district court must measure the particular defendant's role against his or her relevant conduct under USSG §3B1.3. Id. 940-940. The second part of the two part test directs the district court to compare the particular defendant's culpability relative to the other participants in the "criminal scheme attributed to the defendant" where there is sufficient record evidence. Id. The legislative history of USSG Appendix C, Amendment 635 which is subsequent to Rodriguez De Varon provides that when considering an adjustment under §3B1.2 a court

9

must consider the defendant's role in the relevant conduct for which the defendant is held accountable at sentencing against the role of the other participants whether they are charged or not. This same amendment also defines participant as "a person who is criminally responsible for the commission of the offense but need not have been convicted." USSG §3B1.1, comment (n.1).

**REQUEST FOR A VARIANCE FROM HIS ADVISORY GUIDELINE RANGE**

In fashioning a sentence for ROBINSON PEREZ-MONTES, this Court must take into account all of the factors designated in Title 18 U.S.C., Section 3553(a)(1)-(7). The Defendant submits that he should be treated no differently that similarly situated individuals. Although the Defendant did not plea guilty and cooperate, his role and participation in this case is no different than the thousands of defendants sentenced in the Middle District of Florida since February 17, 2000, which is the genesis of Operation Panama Express. Most mariners on vessels seized in connection with drug smuggling on the high seas receive a sentence of 135 months in prison.

In this case, the Colombian mariners on the SPSS received the following sentences, to-wit:

**ROBERT VALENCIA** - Pled guilty to Count One pursuant to a written plea agreement on October 1, 2015. Sentenced by United States District Judge Richard A. Lazzara on June 24, 2016, to 120 months imprisonment and 5 years supervised release.

**CESAR VALENCIA** - Pled guilty to Count One pursuant to a written plea agreement on September 25, 2015. Sentenced by United States District Judge Richard A. Lazzara on June 24,

10

|  |  |  |
|---|---|---|
|  |  | 2016, to 120 months imprisonment and 5 years supervised release. |
| **JOSE RAMOS** | – | Pled guilty to Count One pursuant to a written plea agreement on October 1, 2015. Sentenced by United States District Judge Richard A. Lazzara on June 24, 2016, to 108 months imprisonment and 5 years supervised release. |
| **JOHN PINEDA** | – | Pled guilty to Count One pursuant to a written plea agreement on October 1, 2015. Sentenced by United States District Judge Richard A. Lazzara on August 11, 2016, to 120 months imprisonment and 5 years supervised release. |

As such, the Defendant should be treated similarly to Messrs. CESAR VALENCIA, RAMOS, and PINEDA. See 18 U.S.C., Section 3553(a)(6). This Court heard the evidence against the Defendant at trial and the benefit of the PSIR and has the authority to vary downward from the advisory guideline calculation as it currently exists. Incarcerating a poor Mexican fisherman for twenty (20) years will do nothing to stop the illegal drug trafficking on the high seas nor will it serve society's or taxpayer interest in warehousing a poor fisherman in federal prison at the cost of over **$31,976.00** per year. A reasonable sentence for this Defendant would be **120 months in prison**.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been furnished to CHRISTOPHER F. MURRAY, ASSISTANT UNITED STATES ATTORNEY, 400 N. Tampa Street, Suite 3200, Tampa, Florida 33602, by electronic delivery, this 30th day of August, 2016.

/s/ Daniel L. Castillo
DANIEL L. CASTILLO, ESQUIRE, B.C.S.
3900 North Boulevard
Tampa, Florida 33603-4628
(813) 228-0995
Florida Bar Number 905402
Email: dlcastillo51@gmail.com
Attorney for ROBINSON PEREZ-MONTES
08301601.4